FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 22 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

INTEGRITY ELECTRONICS, INC.,

               Plaintiff,

        v.

GARDEN STATE DISTRIBUTORS, INC.,
G.S.D. MARKETING GROUP, INC.,
CHARLES & MIRA ELMANN REALTY LLC,
CHARLES ELMANN, MIRA ELMANN,
MORRIS ELMANN, SOLLY ELMANN,
and DIGITAL WORLD CAMERA &
ELECTRONICS, INC.,

               Defendants.

_____

Case No.

JURY TRIAL DEMANDED

CV 14 - 3197

COGAN, J.

## COMPLAINT

Plaintiff, by its attorneys, complaining of defendants, alleges that:

## JURISDICTIONAL ALLEGATIONS

1. This is an action by plaintiff INTEGRITY ELECTRONICS, INC., a New York corporation headquartered in New York, to enforce a judgment entered in this Court on July 19, 2012 in the action Integrity Electronics, Inc., v. Garden State Distributors, Inc., and G.S.D. Marketing Group, Inc., case no. 09-cv-2367-ILG-CLP (E.D.N.Y.) (exh.1). Plaintiff sues to enforce the judgment by cancelling certain fraudulent conveyances and by recovering the judgment-debtors' property in the possession of entities and persons controlling the judgment-debtors, including their family members and/or entities owned and controlled by them. The fraudulent conveyances are in violation of sections 272-278 of the New York Debtor and Creditor Law.

2.   The amount due under the judgment is $600,233.65 consisting of the $515,222.02 judgment (exh.1) plus $85,011.63 post-judgment interest to present date, totalling $600,233.65, plus additional post-judgment interest which continues to accrue going forward.

3.   This Court has jurisdiction over the subject matter of this action by reason of this Court's enforcement jurisdiction regardless of diverse citizenship.  Epperson v. Entertainment Express, Inc., 242 F.3d 100 (2d Cir. 2001) (jurisdiction to enforce federal Court's own judgment against fraudulent conveyances in the hands of non-parties exists regardless of diversity of citizenship and regardless of whether the fraudulent conveyances occurred before or after commencement of the prior action); Empire Lighting Fixture Co. v. Practical Lighting Fixture Co., 20 F.2d 295 (2d Cir. 1927).[1]

4.   All defendants -- both the original defendants GARDEN STATE and G.S.D. and all other defendants -- are either ELMANN family members or entities owned and controlled by them.

BACKGROUND AND COMMON ALLEGATIONS

5.   Plaintiff incorporates the allegations of paragraphs 1-4 of this complaint.

6.   Plaintiff sold goods to defendants GARDEN STATE and G.S.D. on an open account on which there was a balance of

---

[1]This is without prejudice to additional jurisdictional bases against one or more defendants by reason of diverse citizenship which is unnecessary to consider, in light of this Court's enforcement jurisdiction.

$405,488.00 which the defendants GARDEN STATE and G.S.D. refused to pay.

7. In order to avoid paying this amount rightfully owed to plaintiff, defendants GARDEN STATE and G.S.D., who are owned and controlled by the ELMANN defendants, fraudulently conveyed their assets to one or more ELMANN defendants personally and/or to one or more other defendants owned and controlled by the ELMANN defendants. These fraudulent conveyances were made either with intent to defraud plaintiff as a legitimate creditor of defendants GARDEN STATE and G.S.D. and/or without fair consideration in violation of sections 272-278 of the New York Debtor and Creditor Law.

8. Plaintiff commenced an action in this Court, to recover the above amount for goods sold and delivered, etc., and obtained a judgment against the original defendants GARDEN STATE and G.S.D. jointly and severally in the amount $515,222.02 on July 19, 2012 (exh.1). Plaintiff obtained this judgment after defendants GARDEN STATE AND G.S.D,, controlled by the ELMANN defendants, willfully obstructed this Court's discovery processes for many years, and willfully violated this Court's discovery orders, leading this Court to strike the pleadings of defendants GARDEN STATE and G.S.D. and to entry of judgment against them. Judge Glasser's extensive Memorandum and Order, detailing defendants' willful obstruction of the discovery processes and willful defiance of this Court's discovery orders, is attached as exh.2 and led to entry of judgment against defendants GARDEN

-3-

STATE and G.S.D. in the amount $515,222.02 on July 19, 2012 (exh.1).

9. No appeal was ever taken from the judgment, nor was any motion ever made to vacate or modify it. The judgment is enforceable for 20 years. CPLR 211(b); Fed.R.Civ.P. 69(a)(1).

10. As mentioned, the amount due under the judgment at the present time is $600,233.65, consisting of the $515,222.02 judgment (exh.1) plus $85,011.63 post-judgment interest through present, plus additional post-judgment interest which continues to accrue going forward.

11. The judgment-debtor defendants GARDEN STATE and G.S.D. were/are located at 1304 North Broad Street, Hillside, New Jersey 07205. These judgment-debtor defendants, who are owned and controlled by the ELMANN defendants, fraudulently conveyed their assets to one or more ELMANN defendants personally and/or to one or more other defendants owned and controlled by the ELMANN defendants ("conveyances") including without limitation:

 a. to defendants CHARLES ELMANN, MIRA ELMANN and CHARLES & MIRA ELMANN REALTY LLC, located at 2412 Ocean Parkway, Brooklyn, New York 11235, in order to purchase the real property located at the judgment debtor's address 1304 North Broad Street, Hillside, New Jersey 07205, now owned by defendants CHARLES & MIRA ELMANN REALTY LLC, CHARLES ELMANN and MIRA ELMANN, and perpetrated the fraudulent conveyance at a time when defendants CHARLES ELMANN and MIRA ELMANN, who are the principals of defendant

-4-

CHARLES & MIRA ELMANN REALTY LLC, were citizens and permanent residents of New York State, in violation of plaintiff's rights as a New York corporation under sections 272-278 of the New York Debtor and Creditor Law (exh.3), and

b.    to defendants CHARLES ELMANN, MIRA ELMANN, MORRIS ELMANN, SOLLY ELMANN and DIGITAL WORLD CAMERA & ELECTRONICS, INC., in order to own and operate the defendant DIGITAL WORLD at that same address 1304 North Broad Street, Hillside, New Jersey 07205, and perpetrated the fraudulent conveyance at a time when defendants CHARLES ELMANN, MIRA ELMANN, MORRIS ELMANN and SOLLY ELMANN, who are the principals of defendant DIGITAL WORLD CAMERA & ELECTRONICS, INC., were citizens and permanent residents of New York State, in violation of plaintiff's rights as a New York corporation under sections 272-278 of the New York Debtor and Creditor Law (exh.4).

<u>COUNT ONE</u>

12.    Plaintiff incorporates the allegations of paragraphs 1-11 of this complaint.

13.    One or both defendants GARDEN STATE and/or G.S.D. made the conveyances without fair consideration either while one or both defendants GARDEN STATE and/or G.S.D. were insolvent or in a manner which rendered them insolvent. Promptly after making the conveyances, the defendants GARDEN STATE and G.S.D. ceased

-5-

operations, were no longer in business, and failed to pay their just debts owing to plaintiff.

14. The conveyances were fraudulent as to plaintiff in violation of section 273 of the New York Debtor and Creditor Law.

<u>COUNT TWO</u>

15. Plaintiff incorporates the allegations of paragraphs 1-11 of this complaint.

16. One or both defendants GARDEN STATE and/or G.S.D. made the conveyances without fair consideration while one or both defendants GARDEN STATE and/or G.S.D. were defendants in the prior action in this Court (case 09-cv-2367) which resulted in the above-mentioned judgment (exh.1), no part of which has been satisfied. Promptly after making the conveyances, the defendants GARDEN STATE and G.S.D. ceased operations, were no longer in business, and failed to pay their just debts owing to plaintiff.

17. The conveyances were fraudulent as to plaintiff in violation of section 273-a of the New York Debtor and Creditor Law.

<u>COUNT THREE</u>

18. Plaintiff incorporates the allegations of paragraphs 1-11 of this complaint.

19. One or both defendants GARDEN STATE and/or G.S.D. made the conveyances without fair consideration while one or both defendants GARDEN STATE and/or G.S.D. were engaged in a business, and the property remaining in the hands of one or both defendants GARDEN STATE and/or G.S.D. making the conveyances was an

unreasonably small capital. Promptly after making the conveyances, the defendants GARDEN STATE and G.S.D. ceased operations, were no longer in business, and failed to pay their just debts owing to plaintiff.

20. The conveyances were fraudulent as to plaintiff in violation of section 274 of the New York Debtor and Creditor Law.

COUNT FOUR

21. Plaintiff incorporates the allegations of paragraphs 1-11 of this complaint.

22. The conveyances were made by one or both defendants GARDEN STATE and/or G.S.D. without fair consideration while one or both defendants GARDEN STATE and/or G.S.D. making the conveyances intended or believed they will incur debts beyond its/their ability to pay as they mature. Promptly after making the conveyances, the defendants GARDEN STATE and G.S.D. ceased operations, were no longer in business, and failed to pay their just debts owing to plaintiff.

23. The conveyances were fraudulent as to plaintiff in violation of section 275 of the New York Debtor and Creditor Law.

COUNT FIVE

24. Plaintiff incorporates the allegations of paragraphs 1-11 of this complaint.

25. The conveyances were made by one or both defendants GARDEN STATE and/or G.S.D. with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud present or future creditors including plaintiff. Promptly after making

-7-

the conveyances, the defendants GARDEN STATE and G.S.D. ceased operations, were no longer in business, and failed to pay their just debts owing to plaintiff.

26.    The conveyances were fraudulent as to plaintiff in violation of section 276 of the New York Debtor and Creditor Law.

WHEREFORE plaintiff demands judgment against defendants jointly and severally cancelling and setting aside the above-mentioned fraudulent conveyances and, to effectuate such cancellation and to recover the property of defendants GARDEN STATE and G.S.D. in the possession of the transferee defendants, awarding judgment to plaintiff against all defendants jointly and severally in the sum $600,233.65 plus further post-judgment interest going forward, plus the costs and attorneys fees incurred by plaintiff in this present enforcement action, and all other relief which is just and appropriate.

Dated:    May 22, 2014

_Barry Skidelsky_

Barry Skidelsky, Esq.
Attorney for Plaintiff
INTEGRITY ELECTRONICS, INC.
185 East 85th Street
New York, New York 10028
(212) 832-4800
bskidelsky@mindspring.com

Dennis Grossman
Attorney for Plaintiff
INTEGRITY ELECTRONICS, INC.
14 Bond Street   (#600)
Great Neck, New York 11021
(516) 466-6690
dagrossmanlaw@aol.com

-8-

# Exhibit 1 = Judgment

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
INTEGRITY ELECTRONICS, INC.,

                                     Plaintiff,

      -against-

GARDEN STATE DISTRIBUTORS, INC., &
G.S.D. MARKETING GROUP, INC.,

                                  Defendants.
-------------------------------------------------------------------X

CORRECTED
JUDGMENT
09-CV- 2367 (ILG)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUL 1 9 2012 ★

BROOKLYN OFFICE

An Order of Honorable I. Leo Glasser, United States District Judge, having been been filed on July 10, 2012, adopting in its entirety the unopposed Report and Recommendation of Magistrate Judge Cheryl L. Pollak, dated June 15, 2012; and directing the Clerk of Court to enter judgment in favor of Plaintiff in the amount of $515,222.02, which represents the agreed-upon amount of $380,735.00 in principal, plus $134,487.02 in pre-judgment interest; it is

      ORDERED, ADJUDGED AND DECREED that judgment is hereby entered in favor of Plaintiff Integrity Electronics, Inc., and against Defendants Garden State Distributors, Inc., and G.S.D. Marketing Group, Inc., jointly and severally, in the total amount of $515,222.02.

Dated: Brooklyn, New York
       July 18, 2012

                                by:

Douglas C. Palmer
Clerk of Court

               s/MG

Michele Gapinski
Chief Deputy for
Court Operations

# Exhibit 2 = Judge Glasser's Memorandum and Order Striking Pleadings and Leading to Judgment

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
INTEGRITY ELECTRONICS, INC.,

               Plaintiff,                             MEMORANDUM AND ORDER

        - against -                          09 Civ. 2367 (ILG) (CLP)

GARDEN STATE DISTRIBUTORS, INC. and
G.S.D. MARKETING GROUP, INC.,

               Defendants.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

Defendants Garden State Distributors, Inc. and G.S.D. Marketing Group, Inc. have filed objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) to the Report and Recommendation of Magistrate Judge Cheryl L. Pollak, dated January 6, 2012 (Dkt. No. 100) (the "R&R") recommending that the Court (1) strike defendants' answer and counterclaims and enter a default judgment against them pursuant to Fed. R. Civ. P. 37(b)(2)(A); (2) order defendants to pay plaintiff's reasonable attorney's fees and expenses pursuant to Fed. R. Civ. P. 37(b)(2)(C); and (3) refer the case to her to conduct an inquest into the amount of damages, interest, and reasonable attorney's fees and expenses pursuant to Fed. R. Civ. P. 37(b)(2)(C) to which plaintiff is entitled. For the reasons stated below, the Court adopts the R&R in its entirety.

## DISCUSSION

### I. Standard of Review

Neither party discusses the standard under which a district court should review a magistrate judge's report and recommendation, but Rule 72 of the Federal Rules of Civil Procedure and the Federal Magistrate's Act, 28 U.S.C. §§ 631 et seq., each provide it.

Under both the Rule and the Statute, the standard depends on whether the issue decided by the magistrate judge is dispositive of a party's claim or defense. With respect to dispositive matters such as the one presented here, Rule 72(b)(1) provides, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Civ. P. 72(b)(1). Portions of the disposition to which the parties have not objected are reviewed for clear error. See, e.g., Orellana v. World Courier, Inc., No. 09 Civ. 576 (NGG) (ALC), 2010 WL 3861013, at *2 (E.D.N.Y. Sept. 28, 2010) (citing Urena v. New York, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001)).

## II. Default Judgment & the Striking of Defendants' Pleadings is Warranted

Defendants object to Judge Pollak's recommendation that the Court render default judgment against them and strike their pleadings on two grounds—that (1) such a sanction is "only to be administered in the most extreme circumstances to redress the most flagrant discovery abuses" and that their behavior falls short of this very high standard, Defendants' Memorandum of Law dated Jan. 23, 2012 ("Defs.' Mem.") at 10 (Dkt. No. 102), and (2) before filing a motion for sanctions pursuant to Rule 37 for insufficient discovery responses, plaintiff was required to move "for and obtain an order compelling more satisfactory answers" before sanctions could be applied, Defs.' Mem. at 15. Both of these arguments are meritless.

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides in relevant part, "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to

2

provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include . . . (iii) striking pleadings in whole or in part; . . . (vi) rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A). Since the text of Rule 37 requires only that the Court's orders be "just," the Court has wide discretion in imposing sanctions under Rule 37. S.E. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (citation omitted). Nevertheless, several non-exclusive factors are useful in determining whether the Court should exercise this discretion: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance. Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)).

With respect to defendants' first contention—essentially that the recommended sanctions are too harsh—while it is true that this Circuit has stated that a "default imposed pursuant to Rule 37 is a 'drastic remedy' generally to be used only when the district judge has considered lesser alternatives," Global NAPs, 624 F.3d at 144 (quoting John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)), at the same time, it has repeatedly stressed that "'discovery orders are meant to be followed,'" id. (quoting Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 853 (2d Cir. 1995), and that "dismissal or default is justified if the district court finds that the failure to comply with discovery orders was due to willfulness, bad faith, or any fault of the party sanctioned," id. (citations and internal quotation marks omitted). Judge Pollak concluded that defendants' consistent failure to comply with her discovery orders

3

satisfied this standard and that default judgment against defendants and the striking of their pleadings was therefore justified. The Court agrees.

Defendants not only repeatedly violated Judge Pollak's discovery orders during the jurisdictional phase of discovery, see R&R at 3 n.2 ("It was not until 9 months of discovery disputes and repeated Court Orders that defendants provided the information necessary to evaluate the question of jurisdiction."),[1] but also failed to timely comply with a number of her orders during the merits phase of discovery, R&R at 4-8. For instance, defendants' counsel failed to appear at a status conference ordered for February 16, 2011, offering no excuse for his absence until days later, and then subsequently failed to adhere to Judge Pollak's orders with respect to the serving of discovery responses, after being granted a number of extensions (including an extension nunc pro tunc) to do so. Id. at 4-5. Further, even after Judge Pollak on June 30, 2011

---

[1] Defendants state that on page 11 of the R&R Judge Pollak "refers to 6 different violations of discovery orders by the defendants, but does not specify their dates or the manner in which they were violated, thus making it impossible for defendants to adequately respond to these [sic]." Defs.' Mem. at 12 n.21. Not so. Judge Pollak discusses in detail defendants' violation of her orders in the background section of the R&R. R&R at 2, 3 & n.2, 4-8.

The Court also finds unpersuasive defendants' contention that they did not have sufficient notice that they could be subject to sanctions for their previous disregard of court orders. Defs.' Mem. at 12. In her June 30, 2011 order, Judge Pollak explicitly warned defendants that failure to comply with the order would result in her recommending that the Court impose monetary sanctions, strike defendants' answer, and render default judgment. Order dated June 30, 2011 (the "June 30th Order") at 2-3 (Dkt. No. 89). She stressed, moreover, that "[t]he course of discovery has been repeatedly delayed by the actions of either defendants or defendants' counsel" and that the very purpose of issuing such a warning was defendants' past conduct: "[G]iven the numerous delinquencies in discovery, as well as the resulting delays, the Court Orders defendants to provide written responses to interrogatories and responsive documents by July 15, 2011." Id.

(1) notified defendants that because of their lack of timely objections to plaintiff's

discovery requests, she considered all objections to the requests to have been waived;

(2) required responses to plaintiff's outstanding discovery requests by July 15, 2011; and

(3) warned defendants that if they failed to respond to the discovery requests by that

date she would recommend that the Court strike their answer, render default against

them, and impose monetary sanctions, June 30th Order at 2-3, defendants nevertheless

still failed to comply with the order. Although it appears that defendants did purport to

respond to plaintiff's discovery requests by the July 15, 2011 deadline, their "responses"

were by any measure inadequate.

As for plaintiff's document requests, defendants either objected to them as

"imprecise and overbroad in the extreme"—in violation of the June 30th Order's

mandate that all objections to the requests were deemed waived—or claimed the

requested documents either did not exist or were contained in a file kept by the

defendants that had "been temporarily misplaced." Affirmation of Charles A. Whittier

dated Jan. 21, 2012 ("Whittier Aff.") Ex. J (Dkt. No. 101). While a court cannot compel

the production of documents that do not exist, see, e.g., Atwell v. City of New York, No.

07 Civ. 2365 (WHP), 2008 WL 5336690, at *1 (S.D.N.Y. Dec. 15, 2008) (citations

omitted) ("[A] party's good faith averment that the items sought simply do not exist, or

are not in his possession, custody, or control, should resolve the issue of failure of

production."), it strains credulity that such a scenario actually existed here.[2] A majority

---

[2] It was not until September 2, 2011, after plaintiffs have moved for sanctions
pursuant to Fed. Civ. P. 37, that defendants located and served a small number of
documents on plaintiff but these documents, too, were largely unresponsive.

5

of defendants' responses to plaintiff's interrogatories were similarly faulty—defendants again either were purportedly unable to answer the interrogatory "due to the fact that the files containing [the requested] information ha[d] been temporarily misplaced" or objected to it as "imprecise and overbroad in the extreme," again even though Judge Pollak had ordered all objections to the interrogatories waived. Whittier Aff. Ex. J. As Judge Pollak aptly noted, "[h]ad there been a legitimate basis to object to specific requests as vague or overbroad, defendants had over two months to raise their concerns with plaintiff's counsel or to issue formal written objections in accordance with the procedures set forth in the Federal Rules of Civil Procedure." R&R at 11. Defendants nevertheless failed to do so.

Defendants' repeated failure to comply with Judge Pollak's discovery orders warrant the striking of defendants' pleadings and the grant of default judgment against them pursuant to Fed. R. Civ. P. 37(b)(2)(A). All of the relevant factors militate in favor of this conclusion. First, defendants' repeated failure to comply with Judge Pollak's orders indicates that the delay was, if not willful, at the very least defendants' fault. This is so even though defendants' counsel claims that defendants' director, Mr. Charles Elmann ("Elmann"), suffers from "diabetes, high-blood pressure and heart ailments," Defs.' Mem. at 8, that prevented him from discussing the case with counsel. See Bambu, 58 F.3d at 853 (rejecting purported illness of client as excuse for non-compliance with discovery orders and affirming default judgment against them as sanction); cf. Agiwal, 555 F.3d at 303 (noting that plaintiff's "alleged health problems . . . cannot excuse his

---

Memorandum of Law in Opposition to Defendants' Objections dated Feb. 27, 2012 at 46 (Dkt. No. 111); see also R&R at 11.

6

repeated failures to comply with the Magistrate Judge's orders" and affirming dismissal of complaint as sanction pursuant to Fed. R. Civ. P. 37(b)(2).[3] Second, lesser sanctions would not be effective because a further discovery order would multiply proceedings in this action, which has already been unnecessarily delayed, and "any sanction short of a default judgment would permit the recalcitrant parties to benefit from their . . . obstruction." Bambu 48 F.2d at 853 (citation omitted). In any event, "district courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." Global NAPS, 624 F.3d at 148 (citation omitted). Third, as for the duration of the period of non-compliance, defendants' recalcitrance and inability to comply with Judge Pollak's discovery orders has delayed this action since its inception in 2009. Finally, there is no question that defendants had notice of the consequences of further non-compliance with Judge Pollak's orders as she explicitly warned them that non-compliance would result in a recommendation that the Court strike their answer, render default judgment against them, and impose monetary sanctions. June 30th Order at 2-3.

Defendants' second contention—that plaintiff was required to move "for and obtain an order compelling more satisfactory answers" before sanctions could be applied, Defs.' Mem. at 15—is also unavailing. Defendants rely on Harbor Seafood, Inc. v. June Foods Holding Corp., No. 87 Civ. 0926, 1988 WL 69850 (S.D.N.Y. June 3, 1988), in support of this argument. Yet Harbor Seafood does not help defendants; that case merely stands for the unobjectionable proposition that "[a] motion for sanctions, in the absence of a prior order pursuant to Rule 37(a) requiring satisfactory answers [to

---

[3] Defendants have presented no evidence of Elmann's alleged health problems.

7

interrogatories], is improper." Id. at *1. Judge Pollak on June 30, 2011 issued just such a "prior order" here, giving defendants one last opportunity to comply with plaintiffs' discovery requests after repeatedly failing to provide any answers, let alone satisfactory ones, to them. In any event, Harbor Seafood did not involve noncompliance with discovery orders at all but instead the question of the adequacy of the defendant's responses to certain interrogatories. Id. Here, by contrast, the sanctions Judge Pollak recommended were not only the result of defendants' woefully inadequate responses to plaintiff's discovery requests but also defendants' sustained history of intransigence and their failure to fully comply with the June 30, 2011 order and the earlier discovery orders in this case.

In sum, it was entirely appropriate for Judge Pollak to consider the prior proceedings before her in determining the proper sanction to impose on defendants, see Global NAPs, 624 F.3d at 144 ("The district court is free to consider 'the full record in the case in order to select the appropriate sanction.'" (quoting Nieves v. City of New York, 208 F.R.D. 531, 535 (2002))), and, in light of the record in this case, Judge Pollak's recommended sanctions were entirely appropriate as well. "[D]iscovery orders are meant to be followed. A party who flouts such orders does so at his peril. . . . . If one suggests that [the Court's] decision today is strong medicine, that is precisely what it is intended to be." Bambu, 58 F.3d at 853 (citation and internal quotation marks omitted). Accordingly, for all of the foregoing reasons, the Court hereby strikes defendants' answer and enters default judgment against defendants pursuant to Fed. R. Civ. P. 37(b)(2)(A).

### III.   Fees and Expenses Pursuant to Rule 37(b)(2)(C) are Warranted

Plaintiff is also entitled to the reasonable attorney's fees and expenses incurred in connection with plaintiff's counsel's efforts to enforce Judge Pollak's discovery orders. Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure provides that instead of or in addition to other sanctions for failure to comply with a court order, "the court <u>must</u> order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added); <u>see also</u> <u>Novak v. Wolpoff & Abramson LLP</u>, 536 F.3d 175, 178 (2d Cir. 2008) (noting in dicta that "use of the word 'shall' certainly suggests that an award of expenses is mandatory unless one of the two exceptions—substantial justification or other circumstances—applies"). For the reasons already discussed above, defendants' repeated failures to comply with Judge Pollak's orders were not "substantially justified." Nor have defendants offered any relevant reason why an award of sanctions would be unjust.[4] An award of reasonable attorney's fees and expenses pursuant to Fed. R. Civ. P. 37(b)(2)(C) is thus warranted. As for Judge Pollak's conclusion that defendants alone shall be responsible for paying the fees

---

[4] Instead, defendants merely state that "plaintiff is not entitled to attorney's fees because it did not serve a Notice of Demand with a full statement of account to the defendants prior to filing this action, therefore the plaintiff did not seek to avoid litigation through settlement and negotiation, as required by the FRCP and local procedure." Defs.' Mem. at 16-17. This argument is a non sequitur. Plaintiff was not required to attempt to settle its dispute with defendants before bringing suit, and this contention thus has no bearing on the Court's analysis.

and expenses—a determination to which no party has objected—the Court finds no clear error in that conclusion.

## IV.   Referral to Judge Pollak Regarding Plaintiff's Damages & Fees

The Court hereby refers this case to Judge Pollak to conduct an inquest, whether through a hearing or by affidavit, to determine the amount of (1) plaintiff's damages, including pre-judgment interest, and (2) attorney's fees and expenses to which plaintiff is entitled pursuant to Fed. R. Civ. P. 37(b)(2)(C).[5]

## CONCLUSION

For all of the foregoing reasons, the R&R is hereby adopted in its entirety. Default judgment is granted against defendants and defendants' answer and counterclaims are stricken. This case is referred to Judge Pollak to conduct an inquest to determine the amount of plaintiff's damages, including pre-judgment interest, and the attorney's fees and expenses to which plaintiff is entitled pursuant to Fed. R. Civ. P. 37(b)(2)(C). Defendants' counsel is warned that the Court will not countenance any further unnecessary multiplication of the proceedings in this action and that a failure to abide by this admonition may result in sanctions. See 28 U.S.C. § 1927.

SO ORDERED.

---

[5] Plaintiff has provided the Court with a submission in which it maintains, among other things, that no evidentiary hearing is necessary to determine the damages to which it is entitled. Plaintiff's Additional Concession Showing the Lack of a Need for an Evidentiary Hearing dated Mar. 13, 2012 (Dkt. No. 112). This Circuit has held that a court is not required to hold a hearing where it has "'ensured that there was a basis for the damages specified in the default judgment.'" Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Judge Pollak is perfectly well suited to make the determination whether a hearing is necessary in light of plaintiff's latest submission.

10

Dated:          Brooklyn, New York
                March 28, 2012

                                              _____/s/_____
                                              I. Leo Glasser
                                              Senior United States District Judge

# Exhibit 3 = re Defendant
# Charles & Mira Elmann Realty LLC

**Westlaw.**

APN:07-01418-0000-00016                                                    Page 1


**REAL PROPERTY TAX ASSESSOR RECORD**

Tax Roll Certification Date:01-10-2008
Owner Information Current Through:09-01-2009
County Last Updated:09-25-2009
Current Date:10/21/2009
Source: TAX AS- SESSOR                    UNION,   NEW JERSEY

**OWNER INFORMATION**

Owner(s):  CHARLES & MIRA ELMANN REALTY L
!LC
Corporate Owner: CORPORATE OWNER
Ownership Rights: CORPORATION
Absentee Owner: OWNER OCCUPIED
Property Address: 1304 N BROAD ST
HILLSIDE, NJ 07205-2405
Mailing Address: 1304 N BROAD ST
HILLSIDE, NJ 07205-2405

**PROPERTY INFORMATION**

County: UNION
Assessor's Parcel Number: 07-01418-0000-00016
Property Type: COMMERCIAL
Land Use: COMMERCIAL BUILDING
Lot Size: 13200
Lot Acreage: 0.3030
Width Footage: 100
Depth Footage: 132
Municipality: HILLSIDE TWP
Block Number: 1418
Lot Number: 16

**TAX ASSESSMENT INFORMATION**

Tax Year: 2008
Calculated Land Value: $175,000.00
Calculated Improvement Value: $169,400.00
Calculated Total Value: $344,400.00
Assessed Land Value: $175,000.00
Assessed Improvement Value: $169,400.00
Assessed Total Value: $344,400.00


© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

01418-0000-00016

Market Land Value: $175,000.00
Market Improvement Value: $169,400.00
Market Total Value: $344,400.00
Valuation Method: MARKET
Tax Amount: $22,351.56

**LAST FULL MARKET SALE INFORMATION**

Sale Date: 05/23/2008
Seller Name: CHO HIWONG & CHUNG K
Sale Price: $400,000.00
Deed Type: GRANT DEED
Type of Sale: RESALE
Recording Date: 05/28/2008
Document Number: 195468
Recording Book/Page: Book 5713, Page 155
Title Company: ATTORNEY ONLY

**PREVIOUS TRANSACTION INFORMATION**

Sale Date: 02/07/1989
Sale Price: $385,000.00
Consideration: FULL
Mortgage Amount: $250,000.00
Recording Date: 02/23/1989
Recording Book/Page: Book 3588, Page 230

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
to order copies of documents related to this or other matters.
Additional charges apply.

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit 4 = re Defendant
# Digital World Camera &Electronics, Inc.

---------- Forwarded message ----------
From: **gsdmarketing@aol.com** <digitalworldcorp@aol.com>
Date: Tue, Apr 12, 2011 at 7:03 AM
Subject: gsdmarketing@aol.com has a new email address
To: avi@integrity100.com

## gsdmarketing@aol.com has a new e-mail address.

Old E-mail Address: gsdmarketing@aol.com

**New E-mail Address:**digitalworldcorp@aol.com

Hello,

I have switched my e-mail address from gsdmarketing@aol.com to
digitalworldcorp@aol.com. Please be sure to update your Address Book and use my
new e-mail address from now on.

Thank You!

digitalworldcorp@aol.com

**Check out the new AOL.** Most comprehensive set of free safety and security tools, free
access to millions of high-quality videos from across the web, free AOL Mail and more.



# New Jersey State Business Gateway Service
### Corporate and Business Information Reporting

## Business Entity Status Report

**Printing Instructions:** Open your Browser's Page Setup menu and set your page margins to 0.25". Use your Browser's Print option to print the report as seen on screen.

**Saving Instructions:** Save this file to your hard drive for later viewing by using the Browser's "Save As" function. All available information is displayed.

---

**Status Report For: DIGITAL WORLD CAMERA & ELECTRONICS, INC.**

**Business Name:** DIGITAL WORLD CAMERA & ELECTRONICS, INC.

**Report Date:** 06/27/2011

**Business ID Number:** 0100992771

**Transaction Number: Sequence:** 1873617: 1

---

**Business Type:** DOMESTIC PROFIT CORPORATION

**Status:** ACTIVE

---

**Filing Date:** 06/02/2008     **Home Jurisdiction:** NJ

**Status Change Date:**     **Stock Amount:** 200

**DOR Suspension Start Date:**     **DOR Suspension End Date:**

**Tax Suspension Start Date:**     **Tax Suspension End Date:**

**Annual Report Month:** 6

**Last Annual Report Filed:** 03/04/2010

**For Last Annual Report Paid Year:** 2010

---

**Incorporator:** JAMIE K HASTINGS

**Agent:** CHARLES ELMANN

**Agent Address:** 1304 NORTH BROAD STREET

HILLSIDE, NJ 07205

**Office Address Status:** Deliverable

**Main Business Address:** 1304 N. BROAD STREET

HILLSIDE, NJ 07205

**Principal Business Address:**

---

**Associated Names**

**Name:**     **Type Description:**

---

**Officers/Directors/Members**

1) **Title:** PRESIDENT

  **Name:** MORRIS ELMANN

  **Address:** 1304 N. BROAD STREET

HILLSIDE, NJ 07205

2) **Title:**    **VICE PRESIDENT**

   **Name:**    **SOLLY ELMANN**

   **Address:**    **1304 N. BROAD STREET**

                   **HILLSIDE, NJ 07205**

  Exit                  Return to Main List

**If you would like to receive photocopies of documents filed by this business entity, mail your request to PO Box 450. Trenton, NJ 08625. Indicate the Business Entity Number(s) involved and the type of document you wish to have copies of. Your choices are listed below:

**CHARTER DOCUMENTS**
Original Certificate Only (For example, Certificate of Incorporation);
Changes and Amendments to the Original Certificate Only; OR
All Charter Documents (Original Certificate and Changes/Amendments)
    And/or
**ANNUAL REPORTS**
Copy of Latest Annual Report; OR
Copy of Annual Report for a Specific Year(s) (List the Year Desired)

**The photocopy fee for all entities except limited liability companies is $1 per page. For limited liability companies, the fee is $1** **for the first page and $2 per page thereafter.**

The total fee amount for your order will vary depending on the number of pages associated with each filed document you request. You may supply us with a check with a NOT TO EXCEED instruction to cover the costs. Make the check payable to the Treasurer, State of New Jersey. Alternately, you may pay by credit card (provide card#/expiration date and cardholder information) or depository account. Please include a self-addressed envelope with your order. If you have any questions or would like information on alternative service options such as over-the-counter expedited service, call 609-292-9292 (option 3 on the main menu and then option 8), weekdays, 8:30 a.m. to 4:30 p.m.

Privacy Policy