UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                  :

INTEGRITY ELECTRONICS, INC.,         :
                                  :

            Plaintiff,            : **MEMORANDUM DECISION AND**
                                  : **ORDER**

         - against -          :
                                  : 14 Civ. 3197 (BMC)

GARDEN STATE DISTRIBUTORS, INC.,   :
   *et al.*,                                 :

           Defendants.         :
                                  :
--------------------------------------------------------- X

**COGAN,** District Judge.

       Plaintiff, a judgment creditor, commenced this case to enforce a judgment entered by

Judge Glasser four years ago after he struck defendants' answer for willful violations of his

discovery orders. Faced with this enforcement action, defendants have stonewalled document

production, offered evasive testimony, and put forth conveniently failed memories in an attempt

to counter evidence that they have engaged in a shell game of incorporating and dissolving

corporations to move and hide assets. Plaintiff seeks various forms of relief, including summary

judgment, striking of defendants' answer, and a turnover order. Plaintiff's motion for summary

judgment is granted in substantial part for the reasons set forth below.

## BACKGROUND

       The following facts are viewed in the light most favorable to defendants and are

undisputed except as otherwise noted.

       In June 2009, plaintiff commenced an action in this Court against defendants Garden

State Distributors, Inc. ("Garden State") and G.S.D. Marketing Group, Inc. ("GSD"), seeking

payment for goods sold and delivered (the "2009 action"). Plaintiff voluntarily dismissed

defendants Charles, Mira, and Morris Elmann from that action when it was determined that they would have destroyed diversity jurisdiction.[1]  In the 2009 action, plaintiff alleged that Garden State and GSD had transferred assets to another corporation controlled by the Ellmans – Digital World Camera & Electronics, Inc. ("Digital World Camera") – so as to avoid collection.

In March, 2012, Judge Glasser struck defendants' answer and ultimately entered default judgment in the amount of $515,222.02 when they repeatedly refused to comply with discovery orders.  See Integrity Elec., Inc. v. Garden State Distrib., Inc., et al., No. 09 Civ. 2367, 2012 WL 1041349 (E.D.N.Y. March 28, 2012).  Specifically, the Court adopted a Report and Recommendation of Magistrate Judge Pollak, who had found that Garden State and GSD had "failed to fulfill their discovery obligations, disregarded the Court's Orders, and unreasonably delayed [those] proceedings."  Integrity Elecs., Inc. v. Garden State Distrib., Inc., et al., No. 09 CV 2367, 2012 WL 1041831, at *8 (E.D.N.Y. Jan. 6, 2012).  No part of that judgment has been paid or satisfied, and it has continued to accrue interest.

On May 22, 2014, plaintiff brought the above-captioned suit under Federal Rule of Civil Procedure 69(a), New York Civil Practice Law and Rules ("CPLR") § 5225, and the New York Debtor-Creditor Law ("DCL") to enforce the judgment by avoiding certain fraudulent conveyances and holding the fraudulent transferees jointly and severally liable for the amounts of those transfers.  In addition to suing the transferor-debtors and Digital World Camera, plaintiff sued Charles & Mira Elmann Realty LLC ("Realty"), Charles Elmann, Mira Elmann, Morris Elmann, and Solly Elmann.[2]

---

[1] Supplemental (or ancillary) jurisdiction exists in the instant case regardless of the diversity of the parties.  See Epperson v. Entm't Express, Inc., 242 F.3d 100 (2d Cir. 2001).

[2] To avoid confusion, I will refer to the individual defendants, who are family members, by their first names.

## I. The Fraudulent Conveyances

The relevant corporate entities, at all relevant times, are as follows. Judgment debtor GSD is a New Jersey corporation that operates in the electronic sales industry. It is owned by Charles (50%) and his son, Morris (50%), who are also its directors. Although the company used an accountant, the accountant did not prepare any balance sheets, general ledgers, or other financial documents relating to GSD. Further, the company did not keep records of invoices or accounts payable, but Morris testified that it "could" have had an annual gross income of between $4 million and $5 million. The company employed four people, including Morris and Solly, and operated out of a warehouse and office located at 1304 N. Broad St., Hillside, New Jersey (the "New Jersey property").

Digital World Camera is a New Jersey corporation that also operates in the electronic sales business but, unlike GSD, makes some of its sales through online vendors. It appears to have been solely owned by Morris at its inception, but is now owned in equal part by Morris (50%) and Solly (50%), though the parties dispute this fact. In any case, evidence indicates that Morris and Solly acted as President and Vice President of Digital World Camera. Digital World Camera also ran its business out of the same New Jersey property. It employed four persons on a permanent basis, including Morris and Solly, but there may have been some temporary employees. Digital World Camera did not file tax returns, and it did not prepare any accounting statements relating to its finances, such as a statement of owner's equity or cash flow, nor did it keep a general ledger.

Realty is a limited liability company owned by Charles (50%) and his wife, Mira (50%). On the evidence presented, it appears that Realty exists to hold the New Jersey property, but it

may also own other property. Realty apparently earns rental income from the New Jersey property.

Plaintiff's Second Amended Complaint alleges one or more defendants committed two fraudulent transfers: (1) a transfer of $300,000.00 from GSD to Charles and then from Charles to Realty (the "$300,000 Transfer"); and (2) a transfer of GSD's business to Digital World Camera, followed by a total of $232,340.78 in checks and withdrawals from Digital World Camera to Morris or to third parties, known or unknown, for his benefit (the "Business Transfer").

A.  *The $300,000 Transfer*

On May 22, 2008, Charles drew on GSD's account a check made out to himself, personally, in the amount of $300,000, which he deposited into a joint banking account that he maintained with his wife Mira.

Charles testified at a hearing before me[3] that the $300,000 was repayment for money that he had previously put into the company. He stated that he could not remember when he made the investment in the company; all he could remember was that "during the course of the business, I was putting [in] some money all the time." He did not document a loan agreement, and therefore the exact terms of his contribution, loan, or investment, if it even happened, cannot be known. When I asked him at the hearing whether he had records of the money going into the company, Charles stated, "I don't have the records, but I did put this amount; maybe a little bit more or maybe a little bit less but I did put this amount. . . . I tell you the truth, I can't remember what happened. I can't remember."

---

[3] I held a total of three evidentiary hearings on the issue of defendants' non-production of documents. Charles testified at the first of these hearings in September 2015.

His later deposition testimony was entirely contradictory as to why he paid (or repaid) himself this money; at one point, Charles stated it was repayment of a loan, and at another point, he called it a return of his initial investment:

> Q: Mr. Elmann, you've claimed that th[is] check is in repayment of a loan, correct?
> A: Correct.
> [. . .]
> Q: . . . [Y]ou claim that th[is] check is in repayment of a loan, correct?
> A: Right.  It's money that I put before when we opened the company.
> Q: And you're claiming that you lent that money to the company?
> A: I didn't lend it, this is an investment to open the company.
> Q: It was [an] investment to open the company?
> A: An investment.  And I took it back, you know, when I retired, and I bought the building.

Charles also confirmed at his deposition that he could not remember the exact time or amounts of his investment or loan to GSD, and that he did not have documents to indicate that he had in fact ever made such an investment.  Defendants have not produced documentary evidence of the supposed capital investment or loan about which Charles testified.

After Charles deposited the $300,000 check from GSD into his joint banking account, he thereafter drew on the joint account a check made out to Realty for $300,000.  Realty used this $300,000 to cover a portion of the purchase price of the New Jersey property and, on May 23, 2008, Realty closed on the New Jersey property.

### B.  The Business Transfer

On or about April 11, 2011, Morris sent an email to GSD customers and other recipients that stated in relevant part,

> gsdmarketing@aol.com has a new e-mail address.

Old E-mail Address: gsdmarketing@aol.com

**New E-mail Address: digitalworldcorp@aol.com**

Hello,

I have switched my e-mail address from gsdmarketing@aol.com to digitalworldcorp@aol.com.  Please be sure to update your address book and use my new e-mail address from now on.

Thank you!

digitalworldcorp@aol.com

At his deposition, Morris confirmed that the "gsdmarketing" email address was that of defendant GSD, and that the "digitalworldcorp" email address was that of Digital World Camera. Morris first stated that he was unsure as to who or how many people received the email. When asked why he sent the email, he testified, "Because I wasn't using this GSD Marketing AOL e-mail anymore.  I wasn't part of GSD.  GSD was history[,]" and "because I wanted our people to know that they could reach me at this e-mail."  When questioned further, Morris testified only that "our people" referred to "people that I need to be in contact with."

On or about August 4, 2011, Morris closed Digital World Camera's bank account at Wells Fargo by drawing a cashier's check in the amount of $134,975.40.  Morris then used that cashier's check to open a new account at a different bank, Chase Bank ("Chase account").  The Chase account shows transfers or withdrawals totaling at least $206,275.00, from the time the account was opened to the present, for which there are no records of the transferees or payees. Other transferees are known, but defendants have offered no business purpose for any of the transfers and have produced no documents that would support a business purpose.

# DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), and when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York, 593 F.3d 196, 200 (2d Cir. 2010) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986)). On a motion for summary judgment, it is not for the court to weigh the evidence, assess the credibility of the witnesses, or resolve issues of fact, but only to determine whether there are issues to be tried. United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994).

The record must be construed in the light most favorable to the non-movant, Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102 (2d Cir. 2013), but "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Further, "conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 151 (2d Cir. 2007). Nor will the motion for summary judgment be defeated merely by raising a "metaphysical doubt" concerning the facts, conjecture, or surmise. Delaware & Hudson R. Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990).

## I.    Choice of Law

As a threshold matter, I must first determine which state's substantive law applies to the $300,000 Transfer. Defendants contend, for the first time in their opposition to plaintiff's motion for summary judgment, that New Jersey law, and not New York law, governs this claim.

In response, plaintiff argues that defendants have repeatedly relied on New York substantive law during the two year history of this litigation, so that they have consented to its application, and that, in any case, New York law would apply irrespective of consent.

I will assume, without deciding, that New Jersey's fraudulent transfer law is subject to a non-waivable statute of repose, as defendants argue, and thus is not subject to equitable tolling, rather than it being subject to a statute of limitations, as plaintiff argues, which might be subject to tolling. Based on that assumption, a conflict of laws would clearly exist. Applying New Jersey law to plaintiff's claim involving the $300,000 Transfer would effectively destroy it – as argued by defendants, New Jersey's fraudulent transfer law sets a four-year statute of repose, and therefore, on the undisputed facts, plaintiff's claims would be time-barred.

"A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020 (1941), and GlobalNet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377 (2d Cir. 2006)).[4] New York law applies an "interest analysis" to tort claims, under which courts apply "the law of the jurisdiction having the greatest interest in the litigation." White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006); Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189 (1985). "[T]he significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." In re Thelen LLP, 736 F.3d 213, 219–20 (2d Cir. 2013) (quoting Schultz, 65 N.Y.2d at 197).

---

[4] Although I have exercised ancillary jurisdiction over this case, I approach the choice of law analysis as a court sitting in diversity jurisdiction, as the underlying action was brought on that basis. However, the result would be no different if I applied federal choice of law analysis. See Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp., 502 F.3d 78, 81 (2d Cir. 2007).

The parties' domiciles require application of New York law to this claim. Plaintiff resides in New York, and defendants have asserted from the beginning that the individual defendants are residents of New York. Realty is a limited liability company that shares the domicile state of each of its members, making it a New York citizen as well. The only defendant that is not a New York resident is GSD, which is a New Jersey resident. However, the potential liability at issue here is not that of GSD, but of the transferees of GSD's assets. GSD already has a money judgment against it, and it is not subject to an additional money judgment; this action is to hold other defendants jointly and severally liable with GSD. Further, the allegation is that Charles, a New York resident and owner of GSD, acted on behalf of GSD when he paid over the $300,000 to himself. The alleged facts of this claim evidence that New York has the greatest interest in the litigation, whereby its laws will both regulate the conduct of its resident defendants when they act as officers and transferees, and protect the resident plaintiff from incurring losses as a result of fraudulent conduct.

If that were not enough to tip the scales in the interest analysis, the locus of the tort justifies using New York law. The parties argue over whether the tort occurred in the place where defendants allegedly made the fraudulent transfer, or whether the injury was sustained where plaintiff resides. In the case of fraud, the tort accrues in the place where the injury occurred, not where the fraud occurred. "[W]here the local law of each litigant's domicile favors that party, and the action is pending in one of those jurisdictions . . . the place of injury governs." Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 76, 595 N.Y.S.2d 919, 925 (1993). The place of injury in this case – where the monetary loss was felt – is where plaintiff is located, in New York.

This place-of-injury rule has been applied almost invariably by courts engaging in New York choice-of-law analyses. See Cooney, 81 N.Y.2d at 77, 595 N.Y.S.2d at 925; see also Steinberg v. Sherman, No. 07 CIV. 1001, 2008 WL 2156726, at *3 (S.D.N.Y. May 8, 2008) (applying New York law where injury occurred, defined as where plaintiffs were located); Drenis v. Haligiannis, 452 F. Supp. 2d 418, 427 (S.D.N.Y. 2006) ("A tort occurs in the place where the injury was inflicted, which is generally where the plaintiffs are located.") (internal quotation marks omitted); Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001) (place in which the injury is deemed to have occurred "is usually where the plaintiff is located"). The place where the injury occurred is a location with which each party has voluntarily associated, in this case, New York – plaintiff, as a resident, and defendant, as having undertaken actions to cause injury there. See Cooney, 81 N.Y.2d at 76, 595 N.Y.S.2d at 925.

Defendants argue that the fraudulent transfer occurred in New Jersey, the location of the purchased property. However, even assuming defendants are correct that the place of the fraudulent conduct, and not the place of the injury, should determine which state's substantive law applies, New York law would nonetheless apply. As noted above, the individual defendants, in some combination, wholly own the other corporations. The fraudulent transfers at issue involve the passing of money first to Charles, and then from Charles and Mira to their wholly owned company, Realty. Therefore, the transfer occurred in New York, through the actions of GSD's officer and Realty, not where the property purchased with the funds from the fraudulent transfer is located. Where the alleged action involves a transfer by a corporate officer to himself, the conduct occurred in the state of the corporate officer's domicile. To find otherwise would allow defendants to shield their fraudulent conduct from the laws of their domiciliary state merely by incorporating their business in another state.

Lastly, the history of this litigation evidences that the parties have consented through their conduct to the application of New York law. Where the parties have agreed to use the substantive law of one state, their consent concludes the choice of law inquiry. See Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997). This includes implied consent by the conduct of the parties. See Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984) ("In the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied.").

Defendants argue that the choice of law issue was never presented to the Court prior to their opposition brief, which they filed through newly substituted counsel. Therefore, they contend, the Court was never asked to decide the issue and "presumably the parties did not focus upon it until recent filings." Substitution of counsel is of no relevance to whether defendants consented to New York law.

This case has been actively litigated by both parties since it was commenced in May 2014. Defendants did not raise in the conferences, premotion letters, or the motion to dismiss itself that New Jersey law applied and, given defendants' argument that the individual defendants were located in New York, it is easy to see why they would not have so argued. When the issue of New York law was raised at both the initial status conference and by defendants at the premotion conference, the parties addressed the issue solely on the basis of New York law. In fact, defendants filed a letter and discussed the issue of the New York statute of limitations at the premotion conference in October 2014. Defendants argued then that plaintiff's claim failed because the New York statute of limitations had already run, but did not formally raise this argument in their motion to dismiss.

The New York statute of limitations did become an underlying reason for defendants' objections to discovery demands, however. At a hearing on the parties' motions to compel discovery, defendants argued that certain discovery objections were reasonable because plaintiff sought documents going back to 2007 "and the statute of limitations of New York for this would be six years from the time he filed his complaint."

Defendants did not raise the New Jersey statute of repose at any time. Until this point, the parties assumed and so represented that New York law controls, and such "implied consent . . . is sufficient to establish choice of law." Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989); see also Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000). Defendants may not now, at this late stage and solely via the signature of a new attorney, change their strategy by attempting to argue this action under New Jersey law. See Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alimentari S.P.A., No. 08-CV-2540, 2013 WL 2154157, at *7 (E.D.N.Y. May 16, 2013) ("The selection of the governing law upon which a plaintiff proceeds is not an ace of spades to be held in counsel's hand until discovery has closed and then sprung on an unsuspecting adversary."), aff'd, Rienzi & Sons, Inc. v. Puglisi, No. 15-791-CV, 2016 WL 520107 (2d Cir. Feb. 10, 2016).[5]

New York law therefore applies to the $300,000 Transfer.

---

[5] Defendants also argue that any claim of waiver must be analyzed under principles of judicial estoppel, and that those principles do not support a finding of waiver. However, they raised this argument for the first time in their reply brief. The Court need not consider this argument. See Keefe v. Shalala, 71 F.3d 1060, 1066 n. 2 (2d Cir. 1995) (normally the court "will not consider arguments raised for the first time in a reply brief"); Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co., 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009), aff'd, 374 F. App'x 71 (2d Cir. 2010) ("[A] district court is free to disregard argument raised for the first time in reply papers, especially on a motion for summary judgment." (quoting Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 (S.D.N.Y. 1997)).

Even if I were to consider the argument, it would not alter the conclusion that New York law applies here. The preconditions to applying judicial estoppel, as argued by defendants, are met here, as discussed in this Section. See Soley v. Wasserman, No. 08 CIV. 9262, 2013 WL 3185555, at *11 (S.D.N.Y. June 21, 2013) (judicial estoppel applied where "accepting [defendant's] new position [regarding choice of law] at this late stage [would] risk[] creating inconsistent results and providing [defendant] with the unfair advantage of a shorter limitations period").

## II.  Legal Standards under DCL

### A.  Constructively Fraudulent Conveyances under DCL

Plaintiff argues that summary judgment is appropriate because defendants have engaged in fraudulent transfers in violation of DCL.  Plaintiff does not allege that defendants transferred assets with actual fraudulent intent, nor does plaintiff bring an alter ego claim.

DCL identifies several situations in which conveyances are considered "constructively" fraudulent, and thereby do not require plaintiff to prove fraudulent intent on the part of the transferor.  See In re Sharp Int'l Corp., 403 F.3d 43 (2d Cir. 2005).  Plaintiff's claims rest on three of these types of constructive fraud: a conveyance that renders the transferor insolvent (§ 273); a conveyance that leaves the transferor with unreasonably small capital (§ 274); and a conveyance by a debtor in a judgment action for money damages where no payment has been made to the creditor (§ 273-a).

Under DCL § 273, "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." A conveyance is "thus deemed constructively fraudulent under § 273 only if two separate elements are satisfied:" (1) the conveyance must be made "without fair consideration," and (2) the transferor "is insolvent or will be rendered insolvent by the transfer in question."  United States v. Watts, 786 F.3d 152, 164 (2d Cir. 2015) (quoting In re Sharp Int'l Corp., 403 F.3d at 53).

Similarly, under DCL § 274,

Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property

> remaining in his hands after the conveyance is an unreasonably small capital, is
> fraudulent as to creditors and as to other persons who become creditors during the
> continuance of such business or transaction without regard to his actual intent.

To prevail on a claim under this section, a plaintiff must prove that (1) the conveyance was made without fair consideration; (2) that, as a result of this conveyance, the transferor was left with unreasonably small capital; and (3) that plaintiff was a creditor prior to or during the time of the business or transaction giving rise to the conveyance. The term "unreasonably small capital" is not defined by DCL, but it has been defined by the courts as "a financial condition short of equitable insolvency," where the transferor is "technically solvent but doomed to fail." In re Chin, 492 B.R. 117, 129 (Bankr. E.D.N.Y. 2013) (quoting MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport Servs. Co., 910 F. Supp. 913, 944 (S.D.N.Y. 1995)); In re Norstan Apparel Shops, Inc., 367 B.R. 68, 79 (Bankr. E.D.N.Y. 2007) (quoting MFS/Sun Life Trust–High Yield Series); see also Moody v. Sec. Pac. Bus. Credit, Inc., 971 F.2d 1056, 1070 (3d Cir. 1992) (defining "unreasonably small capital" under Pennsylvania's Uniform Fraudulent Conveyance Act as "a financial condition short of equitable insolvency"). To make this determination, courts consider factors such as "the company's debt to equity ratio, its historical capital cushion, and the need for working capital in the specific industry at issue, as well as whether the company's projections were reasonable and prudent when they were made." In re Norstan Apparel Shops, Inc., 367 B.R. at 79 (internal marks omitted).

Under DCL § 273-a,

> [e]very conveyance made without fair consideration when the person making it is
> a defendant in an action for money damages or a judgment in such an action has
> been docketed against him, is fraudulent as to the plaintiff in that action without
> regard to the actual intent of the defendant if, after final judgment for the plaintiff,
> the defendant fails to satisfy the judgment.

Therefore, to prevail on a claim under DCL § 273-a, plaintiff must establish that (1) the conveyance was made without fair consideration; (2) the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) the defendant has failed to satisfy the judgment. See Mitchell v. Garrison Protective Servs., Inc., 579 F. App'x 18 (2d Cir. 2014) (quoting Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 188 (2d Cir. 2006)).

## B. Lack of Fair Consideration

Although none of the above-defined constructively fraudulent transactions require proof of the transferor's actual fraudulent intent, a plaintiff must prove under each section that the transaction occurred without fair consideration. See Atlanta Shipping Corp. v. Chem. Bank, 818 F.2d 240, 248 (2d Cir. 1987) ("An essential element of a claim pursuant to DCL §§ 273, 273–a, [and] 274 . . . is lack of fair consideration."). "Fair consideration" is defined in DCL § 272(a) as existing "[w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." Courts therefore analyze fair consideration by looking to evidence (1) that the recipient of the debtor's property either conveyed property in exchange or discharged an antecedent debt in exchange; (2) that such exchange was a "fair equivalent" of the property received; and (3) that such exchange was made "in good faith." See In re Sharp Int'l Corp., 403 F.3d at 53–54; HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1058–59 (2d Cir. 1995).

Good faith refers to the good faith of the transferee, though courts have considered that of both the transferor and the transferee. See Amusement Indus., Inc. v. Midland Ave. Associates, LLC, 820 F. Supp. 2d 510, 527, 527 n. 7 (S.D.N.Y. 2011). A plaintiff may establish a lack of

good faith by establishing that any one of the following factors is absent: "(1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others." Id. (quoting Southern Indus. v. Jeremias, 66 A.D.2d 178, 183, 411 N.Y.S.2d 945 (2d Dep't 1978)).

Where an antecedent debt is discharged in exchange for the conveyance, mere preference between creditors does not constitute bad faith for the purpose of DCL, even when the debtor is insolvent and the transferee knows of the insolvency. See In re Sharp Int'l Corp., 403 F.3d at 54. However, fair consideration is lacking where "the transferee [for an antecedent debt] is an officer, director, or major shareholder of the transferor." Id. (quoting Atlanta Shipping, 818 F.2d at 249).

### III.    The $300,000 Transfer

Plaintiff's first claim alleges that defendants engaged in the fraudulent transfer of $300,000 from GSD to Charles and Mira's joint account, and then from Charles and Mira's joint account to Realty for the purchase of New Jersey property. Defendants do not dispute that GSD made the $300,000 Transfer to Charles, who is the 50% owner and an officer of GSD. Nor do defendants dispute that the check was deposited into the joint bank account held by both Charles and Mira. Charles has testified that the check was repayment either of an investment in the company, or of a loan he made to GSD. In his affirmation submitted on summary judgment, Charles only states in a footnote that the "$300,000 amount reflected G.S.D.'s payment to me, which I then deposited into my joint account with my wife, Mira, and then wrote our check to the LLC account . . . ." He does not attempt to clarify whether the "payment" was actually repayment for a debt owed or for a capital investment.

To begin, there is no record that he ever made such a contribution to the company, or that it was documented as a loan instead of investment capital, or why he would be entitled to get it back as an insider before GSD had paid its creditors.   Nevertheless, neither of these purported bases for repayment is supported by other evidence, and neither would constitute a showing that the transfer of $300,000 from GSD was made for fair consideration.  That this check was made out to the joint account of an officer and major shareholder of GSD alone establishes that the conveyance was without fair consideration.  See In re Sharp Int'l Corp., 403 F.3d at 54; Atlanta Shipping, 818 F.2d at 249; HBE Leasing, 48 F.3d at 634.  Further, even if Charles was not an officer or major shareholder, GSD could not show that the transfer was made in good faith, even assuming that the transfer was for an antecedent debt.  First, Charles could not remember when he made the loan to GSD.  Second, he could not remember how much exactly the loan was – he stated that it could have been more or less than $300,000.  Third, he stated that he did not have the records of this amount of money, and that no one else knew either.  Such indefinite statements, with no other evidence, cannot support either the equivalent value element or the good faith element of fair consideration.

Having found that there is no genuine issue of material fact that the $300,000 Transfer was made without fair consideration, plaintiff could establish that the conveyance is fraudulent if either GSD was insolvent, under § 273, or left with unreasonably small capital, under § 274, at the time of the transfer.[6]  However, insolvency "is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on the transferee." Watts, 786 F.3d at 165 (quoting United States v. Alfano, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999)).

---

[6] Plaintiff did not move under § 273-a as to the $300,000 Transfer because the transfer occurred before plaintiff instituted the prior action against Garden State and GSD, meaning that GSD was not yet a "defendant in an action for money damages."

Defendants have not rebutted this presumption. The only evidence they could have offered is Morris' testimony that the annual income of GSD "could be" four to five million dollars. GSD did not file New Jersey or federal tax returns, and no statement was produced for the month the conveyance was made, or any months prior or after, from which a reasonable jury could draw an inference of solvency. Any speculation by GSD or its officers that GSD was solvent at the time of the transfer, or that it was not left with unreasonably small capital, is not enough to create a genuine issue of material fact, and it does not meet the burden of overcoming the presumption of insolvency. See ITC Ltd. v. Punchgini, Inc., 482 F.3d at 151; Delaware & Hudson R. Co. v. Consolidated Rail Corp., 902 F.2d at 178.

I use the phrase "any speculation by GSD or its officers" because defendants make no attempt to defend against summary judgment on the basis of fair consideration, solvency, or adequate capital. In fact, defendants make no argument under the DCL at all as to claims against GSD. Instead, defendants argue that any claim under § 273 against Morris, Digital World, Charles, Mira, or Solly must be denied because plaintiff offered "no evidence" that any of these defendants were "indebted to plaintiff." But this entirely misses the point – the initial transfer at issue here is one made by GSD, who was a debtor to plaintiff, as adjudicated in the 2009 action. The other defendants are liable as fraudulent transferees.

Plaintiff brought this action against the transferor and transferees under Federal Rule of Civil Procedure 69(a)(1), which provides for enforcement of judgments according to the practice and procedure of the state in which the district court is held. In turn, CPLR § 5225 allows a judgment creditor to recover "money or other personal property" against a person "who is a transferee of money or other personal property from the judgment debtor" so long as the judgment creditor's rights to the property are superior to those of the transferee. N.Y. C.P.L.R. §

5225(b). Although § 5225(b) envisions a special proceeding, rather than a plenary action, the distinction is immaterial since there are no special proceedings in federal court. See Mitchell v. Lyons Prof'l Servs., Inc., 109 F. Supp. 3d 555, 565 (E.D.N.Y. 2015) ("[a] special proceeding is a creature of New York law with no federal analogue" (quoting S.E.C. v. Colonial Inv. Mgmt., LLC, No. 07 Civ. 8849, 2010 WL 4159276, at *3–4 (S.D.N.Y. Oct. 6, 2010))), aff'd sub nom. Mitchell v. Garrison Protective Servs., Inc., 819 F.3d 636 (2d Cir. 2016).

DCL § 278(1) expressly allows a remedy against fraudulent transferees. That section states that, "[w]here a conveyance or obligation is fraudulent as to a creditor, such creditor . . . may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser," either have the conveyance set aside to the extent necessary to satisfy the claim, or disregard the conveyance and attach or levy execution upon the property conveyed. The aim of both provisions is the same, which is that a debtor may not avoid payment of its debts to a creditor by setting in motion a chain of conveyances through related entities and family members. And although plaintiff seeks, in part, a turnover of Digital World Camera's interest in the New Jersey property, which is expressly contemplated under CPLR § 5225, the substantive right asserted in plaintiff's claims to hold the transferees jointly and severally liable derives from DCL § 278. Plaintiff has combined the substantive right from DCL § 278 and the procedural mechanism afforded under CPLR § 5225 in this action, but I will not put form before substance, particularly where the special proceedings of the CPLR reach to transferees even where there has been no fraudulent conveyance. See Michell v. Lyons Prof. Servs., 109 F. Supp. 3d at 563 (discussing the scope of a plenary action under DCL versus that of a special proceeding under CPLR).

Defendant transferees suffer no prejudice from construing plaintiff's claims against them as arising under § 278. First, Plaintiff's Second Amended Complaint alleged violations of "sections 272–278" of DCL. Although plaintiff did not specifically cite § 278 in their summary judgment motion, defendants have been on notice of this section since October 2014. Second, the substance of a claim under § 278 was asserted on summary judgment, and defendants did not attempt to defend the factual allegations which form the basis of plaintiff's claims. Lastly, the intra-familial nature of these transfers, whether through a co-owned LLC or corporation, means that the actual conduct by the transferors and the transferees were undertaken by the same individuals, regardless of the legal moniker used. Therefore, plaintiff's claims to hold non-judgment creditors liable and for a turnover order plainly arise under § 278, and plaintiff has sufficiently established a claim under this section and for the relief provided in CPLR § 5225. See Mitchell v. Garrison Protective Servs., Inc., 819 F.3d at 640-41.

Avoidance of payment is precisely what defendants attempt to achieve through the transfers here. Plaintiff was a creditor (although not yet a judgment creditor) of GSD under DCL at the time of the $300,000.00 Transfer. Plaintiff has already established that there was no fair consideration for this initial transfer, and the relationship between all of the parties establishes that the transferees were not "without knowledge of the fraud" at the time of the subsequent conveyances. Charles, as an officer of GSD, transferred the money to his joint bank account; he then transferred the money to Realty. Realty, having received the transfer of the $300,000 without fair consideration, then used the funds to close on a real estate sale. Mira, although not the individual to make the transfers, was a transferee and beneficiary of the transfer when it was

deposited into the bank account she shared with Charles, and then used by Realty, in which she is a co-owner, to purchase the New Jersey property.[7]

Plaintiff's motion for summary judgment as to the fraudulent $300,000 Transfer is granted against GSD, Charles, Mira, and Realty in the amount of $300,000 plus pre-judgment interest.[8]

## IV.    The Business Transfer

Plaintiff also challenges the transfer of GSD's business to Digital World Camera, and the subsequent transfers from Digital World Camera to various payees that are either unknown or were transfers for personal expenses, alleging that these transfers violated DCL because there was no fair consideration and GSD was (1) a judgment debtor of plaintiff; (2) insolvent at the time of transfer; and (3) left with unreasonably small capital.  Plaintiff alleges that the initial transfer involved Morris' transfer of GSD's book of business to Digital World Camera and that Digital World Camera, now having GSD's accounts, then made fraudulent conveyances to unknown parties.

---

[7] "[O]ne need *only* be a transferee or beneficiary to be a participant in a fraudulent transfer; not either a transferee or beneficiary of a fraudulent conveyance and a participant in the underlying fraud." Fed. Nat. Mortgage Ass'n v. Olympia Mortgage Corp., 792 F. Supp. 2d 645, 655 (E.D.N.Y. 2011) (emphasis in original); see also Fundacion Presidente Allende v. Banco de Chile, No. 05 CV 9771, 2006 WL 2796793, at *3 (S.D.N.Y. May 29, 2006) ("A fraudulent conveyance claim seeking to recover money damages can only be maintained against a person who participates in the fraudulent transfer as either the transferee of the assets or the beneficiary of the conveyance."). Further, any argument that Mira was "without knowledge of the fraud" are unavailing; Mira was joint owner of the bank account, and joint owner of Realty, both of which were transferred the funds.

[8] When a transfer is fraudulent under DCL, the creditor may obtain judgment against any transferee to whom his debtor has transferred the property up to the value of the property, but may not exceed the amount owed the creditor by the debtor.  See RTC Mortgage Trust 1995 S/N1 v. Sopher, 31 F. App'x 37, 39 (2d Cir. 2002); RTC Mortgage Trust 1995-S/N1 v. Sopher, 171 F. Supp. 2d 192, 202 (S.D.N.Y. 2001); United States v. Red Stripe, Inc., 792 F. Supp. 1338, 1344 (E.D.N.Y. 1992).  However, the creditor is also entitled to pre-judgment interest of nine percent (9%) per annum pursuant to CPLR § 5004.  See, e.g., In re All Am. Petroleum Corp., 259 B.R. 6, 21 (Bankr. E.D.N.Y. 2001).

A. <u>GSD's Book of Business</u>

Plaintiff alleges that the transfer of GSD's business occurred on or about April 12, 2011, when Morris sent an email with the subject line, "gsdmarketing@aol.com has a new email address." There is no dispute that GSD was a defendant in an action brought by plaintiff at the time this email was sent, and that no payment on the judgment had been made. Therefore, plaintiff has proven two of the necessary elements of a constructive fraudulent transfer claim under DCL § 273-a. All that plaintiff must therefore establish is that GSD made a conveyance – here, a transfer of GSD's business – without fair consideration.

If this email is not a transfer GSD's book of business to Digital World Camera, I don't know what else it could be. More importantly, a reasonable jury could not find that it was anything other than a transfer of GSD's business to Digital World Camera. Morris is essentially telling the recipients of his email that GSD is now operating as Digital World Camera. The email is particularly damning in light of the statements by both Morris and Charles in this proceeding that Charles was in the process of retiring or had retired by that time, and Morris' deposition testimony that GSD was "history," and that both GSD and Digital World employed the same individuals, engaged in substantially the same business, shared the same warehouse, and had adjacent offices in the same building. In the absence of evidence supporting another explanation, there is no genuine issue of material fact to send to a jury which, on the basis of the evidence presented by plaintiff, could only conclude that GSD transferred its book of business.

Defendants make no attempt to argue that there was fair consideration for the transfer; instead, defendants argue, without supporting evidence, that there was no transfer at all. Morris testified only that the email went to people with whom he "need[ed] to be in contact," but did not

give any further information about who those people were or why he would be in contact with them from either account. Nor did defendants produce documents to show that the book of business for GSD and Digital World Camera differed (and they could not, since neither business kept books). All that defendants offer as contrary evidence is Morris' flimsy declaration, submitted on summary judgment, that "[i]n connection with the winding down of G.S.D., Digital World [Camera] did not receive any portion of G.S.D.'s inventory or accounts receivable" and that, "[t]o the best of [his] recollection, except for approximately $9,500 transferred by G.S.D., all of the funds going into Digital World Camera was [sic] generated by its own activities and were not taken from the funds, if any, that G.S.D. had when it ceased operations." Morris' conclusory statements in his declaration are inconsistent with, if not contradictory to, his own deposition testimony. Even were I to consider these conclusory assertions presented for the first time on summary judgment, see Brown v. Henderson, 257 F.3d 246 (2d Cir. 2001), the declaration is insufficient. At best, these statements are pure speculation; at worst, they are a deliberate attempt by defendants to obscure the fraudulent nature of the transfer. Either way, summary judgment is warranted as to this transfer.

Defendants testified that GSD did not file taxes or prepare financial statements, and therefore the exact value of GSD's business is unknown. However, defendants may not escape liability by refusing to provide information on the companies' assets and valuation. Morris testified before the Court at a discovery hearing that he believed that the annual gross income of GSD "[c]ould be anywhere between four to five million dollars." The value of Digital World Camera prior to the transfer, if any, is unknown. Like GSD, Digital World Camera did not file tax returns and no financial statements were produced to plaintiff. Therefore, a transfer of all of GSD's business would be a transfer worth a substantial amount of money, and at the very least,

the amount owed by GSD as a judgment debtor to plaintiff, totaling $515,222.02. Therefore, summary judgment is granted against defendant Digital World Camera in the amount of $515,222.02 plus pre-judgment interest.[9]

B. Transfers from Digital World Camera totaling $232,340.78

Plaintiff also alleges that a number of transactions from Digital World Camera were subsequent fraudulent transfers of GSD's assets, totaling $232,340.78:

| Amount Transferred from Digital World Camera | Transferee |
|---|---|
| $17,788.05 | NYC Dep't of Finance |
| $46,900.00 | Account number #9214 (unknown) |
| $17,990.00 | Account number #9583 (unknown) |
| $35,325.00 | Account number #2565 (unknown) |
| $8,277.73 | Morris Elmann |
| $100,000.00 | Unknown |
| $3,000.00 | Morris Elmann (listed as customer) |
| $1,200.00 | Account number #0915 (unknown) |
| $1,950.00 | Unknown |

These transfers occurred between September 2011 and December 2013, after the transfer of GSD's book of business. Implicit in plaintiff's argument regarding these transfers is the allegation that these funds, as transferred from Digital World Camera, in fact originated with

---

[9] The Court notes that defendants did not challenge plaintiff's computation of damages at all. However, plaintiff incorrectly attempts to hold various defendants accountable for all transfers and subsequent transfers from GSD without regard to their personal involvement or benefit from these transfers. I have therefore, on the evidence before me, held only certain defendants joint and severally liable for each transfer, and only to the extent that the evidence supports the valuation of those transfers.

GSD because they stemmed from GSD's book of business. Defendants present no evidence to show that Digital World Camera had its own flow of income separate from GSD. Morris' conclusory assertion that "all of the funds going into Digital World Camera was [sic] generated by its own activities and were not taken from the funds, if any, that G.S.D. had when it ceased operations," is not sufficient to defeat summary judgment. Under the rules of evidence, he would not be permitted to take the witness stand and offer conclusions like this at trial and he is no more entitled to do so on summary judgment. See Section III.A, supra.

In any event, his assertion is beside the point. It is crystal clear that what happened here is that Morris stopped doing business under the name GSD on one day and started doing the same business under the name Digital World Camera the next. When Morris talks about "its own activities," they were only "its own activities" because of a phony name change. It was quite obviously the same business.

Under DCL § 278, plaintiff may recover property fraudulently conveyed from an immediate transferee or a subsequent transferee, so long as the conveyance was not one for fair consideration and the transferee was without knowledge of the fraudulent nature of the transaction. These particular transfers appear to have been called out by plaintiff to show that they were not made for fair consideration, and therefore must be avoided. Plaintiff does not challenge other transactions to known transferees. To the extent that the subsequent transferees are unknown, those parties are not defendants, and judgment cannot be entered against them even if the transfers were without fair consideration.

Fraudulent transfers made to or for the benefit of Morris may be avoided. Because Morris is an officer and owner of Digital World Camera, there is no fair consideration for any such transfers. However, plaintiff has not shown that every transfer was to or for the benefit of

Morris.  The mere fact that every withdrawal and check was signed by Morris does not mean that Morris personally received the benefit.  Nevertheless, for some transactions, plaintiff has provided additional evidence sufficient to find that Morris was the beneficiary of those transfers.

In the Chase account documents, handwritten notes appear, presumably written by Morris, underneath the copies of withdrawal slips and cancelled checks, describing transactions.  For instance, the $17,788.05 transfer to "NYC Dep't Finance" has a handwritten note "taxes"; the note pertaining to a $3,000 withdrawal by Morris states "withdrawal"; on the Chase account copy of the cancelled check made out to Morris for $8,277.73, a note reads "Distribution."  These notes were not written on the withdrawals or checks themselves, but on the copies of these documents produced to plaintiff.

No reasonable jury could credit these notes in the first instance, because they were obviously written after the beginning of the litigation – the Chase account was not disclosed until Morris' deposition in November 2015, much less requested and produced to plaintiff.  Even if these notes accurately reflected transactions occurring two to four years before, the notes themselves do not establish that the transfers were for legitimate purposes.  The least obvious of these is perhaps the check to the New York Department of Finance for "taxes," but plaintiff has made a *prima facie* case that this check was made for Morris' benefit.  He was the President of the company, at least a part owner, and he lived in Brooklyn.  By contrast, as defendants have fervently argued, Digital World Camera is a New Jersey Corporation that operates out of a rented New Jersey property.  A reasonable jury could only find that this payment went to benefit Morris for taxes he personally owed to the City of New York.

The same holds true for the transfers of $3,000 and $8,277.73.  As with the original transfer to Digital World Camera above, although the exact value of GSD's book of business is

unknown, it is certainly more than the $29,065.78 subsequently transferred here.  Plaintiff has established through defendants' own documents that these transfers were made to or for the benefit of its owner and director Morris, and a reasonable jury could not find otherwise.

Summary judgment is therefore granted against Morris in the amount of $29,065.78 plus pre-judgment interest based on a single, reasonable intermediate date pursuant to CPLR § 5001(b).

**V.     Claims Against Solly**

As to defendant Solly, summary judgment is denied.  Under New York law, a creditor may recover money damages only against those parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance.  See Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d at 1172.  Solly's only connection to the fraudulent Business Transfer to Digital World Camera was his ownership in the company.  Plaintiff has not established that Solly personally participated in the transfers, or that any transfers were made directly to him or for his benefit personally.

Indeed, it appears that plaintiff has failed to raise a factual issue as to whether Solly is personally liable for these transfers. Therefore, if plaintiff intends to proceed to trial against Solly, plaintiff must present evidence sufficient to create a triable issue of fact for this defendant within 14 days of this Order.  See Fed. R. Civ. P. 56(f); Coollick v. Hughes, 699 F.3d 211, 218 (2d Cir. 2012) (upon reviewing record, district court "was free to . . . award or deny summary judgment to any party") (citing Lowenschuss v. Kane, 520 F.2d 255, 261 (2d Cir. 1975)). Failure to present such evidence will result in dismissal of all claims against Solly.

## VI.    Motions to Strike Answer, for Turnover Order, and for Appointment of Agent

Having decided plaintiff's motion for summary judgment, I need not determine whether defendants' continued discovery violations necessitate striking their answer and entering judgment against them.  I will merely note, however, that defendants' conduct throughout the course of this litigation has already warranted multiple sanctions.  It is clear that these sanctions were not sufficient, as indicated by defendants' further misconduct during discovery.  Since discovery began in November 2014, the parties have engaged in motion practice relating to document discovery and sanctions for the failure to so produce those documents.  Plaintiff brought the first discovery dispute brought to my attention in February 2015, which required a hearing to adjudicate.

A complete rehashing of each discovery issue is not necessary, but suffice it to say that, by the time plaintiff's current motion for summary judgment was filed, it was preceded by numerous filings regarding discovery disputes, three evidentiary hearings on defendants' failure to produce discovery, and at least three motions by plaintiff to strike defendants' answer, and for other relief, due to defendants' discovery violations.  I had already issued two separate sanctions Orders against defendants for reasonable attorneys' fees for failure to comply with discovery obligations.[10]  In addition, I had to require defendants to post a bond in March 2015 in the amount of $3,000 for their lack of good faith in discovery and my concern that defendants would fail to pay costs should they not prevail in the action.  Plaintiff's prior motion to strike defendants' answer was based on the fact that certain tax documents still had not been produced

---

[10] These two sanctions Orders were in addition to an Order awarding attorneys' fees and costs to plaintiff in connection with an emergency motion filed by defendants which asserted that Charles was too ill to appear in New York for his scheduled deposition.

and that defendants willfully failed to disclose the existence of Digital World Camera's Chase account until November 2015 – nearly a year after plaintiff's initial document request – and had not since produced full records of the Chase account.

At the last discovery hearing held on December 21, 2015, I ordered defendants to produce cancelled checks and transaction records for the Chase account and warned defendants, given their Thimblerig-like conduct throughout this proceeding and the 2009 action, that a receivership may be necessary, and that plaintiff may move for a receivership at any time. It was clear to me then, as it is now, that further Orders and monetary sanctions are no deterrent – defendants have merely continued in this action to engage in the same obstructive discovery practices that led to their default judgment before Judge Glasser, and a more severe punishment would be necessary. However, because summary judgment has been granted in part, the motion to strike defendants' answer is denied as moot.

Lastly, plaintiff requests that I order defendants Charles and Mira to turn over their ownership interest in Realty, which they own together in equal parts, and to appoint plaintiff's counsel as agent of defendants to sign the documents transferring that ownership interest. I deny both motions without prejudice. Given the unknown value of Realty and the property it owns, and the potential unknown entities owned in some combination by defendants, a turnover might result in an interest in excess of the amounts owed. Plaintiff will ultimately have a money judgment against Realty as a result of this decision and they can pursue their remedies to enforce it.

## CONCLUSION

Plaintiff's motion for summary judgment is granted in part and denied in part.

Defendants' cross-motion for partial summary judgment is denied. Within 7 days of this Order,

Plaintiff must submit a proposed interest calculation, and defendants may respond within 7 days

of plaintiff's submission. Additionally, plaintiff must indicate within 14 days of this Order

whether it has evidence against Solly sufficient to create a triable issue of fact; otherwise, the

claims against this defendant will be dismissed.

**SO ORDERED.**

Digitally signed by
Brian M. Cogan
_____
                              U.S.D.J.

Dated:  Brooklyn, New York
          June 30, 2016